**2013 UT App 247**

# THE UTAH COURT OF APPEALS

M.F.,
Petitioner and Appellee,

*v.*

J.F.,
Respondent,

D.F. AND R.F.,
Intervenors and Appellants.

Memorandum Decision
No. 20121010-CA
Filed October 18, 2013

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 034401898

D.F. and R.F., Appellants Pro Se
Martin N. Olsen, Attorney for Appellee
Martha Pierce, Guardian ad Litem

JUDGE J. FREDERIC VOROS JR. authored this Memorandum Decision, in which SENIOR JUDGE RUSSELL W. BENCH concurred.[1] JUDGE GREGORY K. ORME concurred in the result.

VOROS, Judge:

¶1     This is a divorce case. However, this appeal is brought by grandparents seeking to enforce a no-contact order issued by a juvenile court. The central question before us is whether the

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

grandparents had standing in a district court action to seek enforcement of the juvenile court's order.[2] We agree with the district court that they did not.

¶2 M.F. (Mother) and J.F. (Father) filed for divorce in 2003 (the Divorce Case). In 2004, Father's parents (Grandparents) initiated a separate case in juvenile court (the Child Welfare Case) alleging that Mother abused or neglected their children. In January 2005, Mother and Grandparents attended a mediation session related to the Child Welfare Case and reached a thirteen-point stipulation. Points one and seven are relevant here: "1. The children will have no contact, direct or indirect, with [K.M.] or his family" and "7. The petition before the Juvenile Court will be dismissed." Eight days later, the juvenile court issued an Order of Final Disposition, which incorporated the stipulation and dismissed the Child Welfare Case.[3]

¶3 In 2011, Grandparents filed in the juvenile court a Motion for Order to Show Cause, seeking to enforce the no-contact provision of the stipulated order. The juvenile court ruled that it "lack[ed] jurisdiction to hear the Order to Show Cause" because the Child Welfare Case "was dismissed by stipulation of the parties and

---

2. We have jurisdiction pursuant to Utah Code section 78A-4-103(2)(h), which confers jurisdiction on the Utah Court of Appeals over "appeals from district court involving domestic relations cases, including, but not limited to, divorce [and] child custody." Utah Code Ann. § 78A-4-103(2)(h) (LexisNexis 2012). Throughout this decision, we cite the current edition of the Utah Code Annotated where the relevant provisions of the Utah Code have not changed in any way material to our analysis.

3. In 2006, Grandparents filed a Motion to Intervene as to Visitation in the Divorce Case. That motion did not concern the no-contact provision, was denied by the district court, and is not a part of this appeal.

court order . . . and the matter was transferred to the Fourth District Court." Grandparents appealed that ruling, and we affirmed. *See In re J.F.*, 2011 UT App 351, 264 P.3d 553 (per curiam). Our opinion explained that, after dismissing the Child Welfare Case, the juvenile court lacked jurisdiction to enforce the no-contact provision. *Id.* ¶ 4. As a result, the district court was the proper court for any litigation stemming from the no-contact provision. *Id.*

¶4     We also wrote that "[i]f Grandparents seek to pursue their claim that the no contact provisions were inappropriately modified or removed by the district court because Grandparents' consent was not obtained, that claim must be presented to the district court where the modification occurred." *Id.* Grandparents subsequently presented the claim to the district court by filing a Motion for Order to Show Cause (the Second OSC Motion) in the pending Divorce Case.[4] They also filed another motion seeking to have a new case number assigned to their motion (the Renumbering Motion). After a hearing, the district court denied the Renumbering Motion and ruled that the no-contact provision, upon which the Second OSC Motion was based, was void and unenforceable and that, consequently, Grandparents lacked standing in the Divorce Case.

¶5     Grandparents contend that the district court erred by orally ruling at a hearing "one way on an issue" and then signing "a proposed order reversing itself the other way." At the hearing, the district court indicated that it would rule that the no-contact provision was "void as it relates to this Court." Grandparents' counsel then asked the district court, "So you're not ruling [in a

---

4. Grandparents assert without record support that when they attempted to file the Second OSC Motion, the court clerk informed them that they needed to file it with an existing district court case number. They further assert that they objected when the clerk "suggested they use the divorce case number" and only acquiesced when the clerk "told them that was how it had to be filed or she would not accept it."

manner] that would be res judicata as to my clients that they cannot bring in a new case?" The district court expressed doubt about the viability of a separate case but responded that if Grandparents "chose somehow to bring it in a new case, at least it could be looked at under those circumstances as it relates ultimately to the issue of standing and enforceability." However, the order prepared by prevailing counsel did not state that the juvenile court's order was merely "void as it relates to this Court"; it stated that the order was "void and unenforceable." Grandparents objected to the discrepancy and asked the district court to clarify its intended ruling. Notwithstanding the objection, the district court signed the proposed order.

¶6     Our case law is clear that where a court's oral ruling differs from a final written order, the latter controls.[5] *Evans v. State*, 963 P.2d 177, 180 (Utah 1998). Here, Grandparents properly alerted the district court to the discrepancy by objecting to the proposed order. Nevertheless, the district court signed the order. Therefore, the operative ruling is the written order: "[T]he no contact Order transferred to this Court from Juvenile Court in 2005 is void and unenforceable; consequently, the grandparents have no standing in the divorce action . . . ." Grandparents now appeal from this order.

¶7     As a threshold matter, the Guardian ad Litem contends that Grandparents lack standing.[6] We review standing issues for correctness. *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 10, 266 P.3d 702. Standing is a threshold "jurisdictional requirement that must be satisfied before a court may entertain a controversy between two

---

5. We note, however, that preparing an order that "materially misstate[s]" the court's ruling may violate the bad faith attorney fee statute. *See Warner v. Warner*, 2013 UT App 225, ¶ 40, 743 Utah Adv. Rep. 35; Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012).

6. Mother did not file a brief on appeal but instead joins the brief filed by the Guardian ad Litem.

parties." *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (citation and internal quotation marks omitted). "Under the traditional test for standing, the interests of the parties must be adverse and the parties seeking relief must have a legally protectible interest in the controversy." *Id.* (citation and internal quotation marks omitted).

¶8 Grandparents concede that they "did not have standing to intervene" in the Divorce Case. However, they argue that the district court "improperly denied [the Second OSC Motion] by forcing them to file in the divorce case" and then improperly denied the Renumbering Motion. In essence, Grandparents contend that the district court's rulings prevented them from filing the Second OSC Motion as a separate case in which they would have had standing.

¶9 However, the basis for the district court's ruling was not that Grandparents were improper parties to the Divorce Case. Rather, the district court ruled that Grandparents lacked standing because the no-contact provision was "void and unenforceable." According to the district court's apparent rationale, because the no-contact provision was void, no legally protectible interest was at stake. And because there was no "legally protectible interest in the controversy," *id.*, Grandparents lacked standing to enforce the provision.

¶10 We agree with the district court that the juvenile court's order was void and unenforceable because the juvenile court lacked jurisdiction. "A court must have subject matter jurisdiction to have the power and authority to decide a controversy. Without subject matter jurisdiction a court cannot proceed." *Burns Chiropractic Clinic v. Allstate Ins. Co.*, 851 P.2d 1209, 1211 (Utah Ct. App. 1993). The juvenile courts "have limited jurisdiction. Their powers are limited to those specifically conferred by the statute." *In re B.B.*, 2004 UT 39, ¶ 13, 94 P.3d 252 (citations omitted). The scope of the juvenile court's jurisdiction is established in sections 103 and 104 of the Juvenile Court Act. *See* Utah Code Ann. § 78A-6-103 (LexisNexis 2012) (setting forth the situations in which a

juvenile court has exclusive jurisdiction); *id.* § 78A-6-104 (defining when a juvenile court has concurrent jurisdiction with a district court). Under section 103(1)(c) of the Juvenile Court Act, a juvenile court has exclusive original jurisdiction in proceedings concerning "a child who is an abused child, a neglected child, or dependent child." *Id.* § 78A-6-103(1)(c); *see also In re M.J.*, 2011 UT App 398, ¶ 49, 266 P.3d 850.

¶11   Under section 117 of the Juvenile Court Act, "[w]hen a minor is found to come within the provisions of Section 78A-6-103, the court shall so adjudicate." Utah Code Ann. § 78A-6-117(1)(a) (LexisNexis 2012). The Utah Rules of Juvenile Procedure provide that an "'[a]djudication' means a finding by the court, incorporated in a judgment or decree, that the facts alleged in the petition have been proved." Utah R. Juv. P. 5(b). "Once the juvenile court has adjudicated the child as falling under its jurisdiction, it has ongoing jurisdiction over that child," *In re M.J.*, 2011 UT App 398, ¶ 49, and may make "dispositions by court order" as provided in section 117, Utah Code Ann. § 78A-6-117(2). Indeed, a disposition is, by definition, "any order of the court, *after adjudication*, pursuant to Section 78A-6-117." Utah R. Juv. P. 5(f) (emphasis added). Section 117 enumerates the types of dispositional orders available to the juvenile court. The juvenile court may, as was done here, "order reasonable conditions to be complied with by a minor's parents," including "restrictions on the minor's associates" and other "requirements to be observed by the parents." Utah Code Ann. § 78A-6-117(2)(p)(i)(B), (D).

¶12   Based on the foregoing, Grandparents, seeking dispositional orders protecting their grandchildren, properly petitioned the juvenile court to adjudicate the children as neglected, abused, or dependent. However, so far as the record before us shows, the children were never adjudicated as neglected, abused, or dependent under section 103(1)(c), and the juvenile court did not determine any alternative basis for exercising jurisdiction. On the contrary, it dismissed the case based on the parties' stipulation. As we have previously noted, "where the juvenile court makes a

ruling incompatible with a continuation of its authority, the court's jurisdiction ends." *In re S.F.*, 2012 UT App 10, ¶ 34, 268 P.3d 831.

¶13    Accordingly, when it dismissed the case, the juvenile court relinquished any jurisdiction it might have had, regardless of whether it had ever established the jurisdiction necessary to enter dispositional orders. And once "the jurisdiction of the juvenile court terminates, then so does the effect of its orders." *See Shedron-Easley v. Easley*, 2011 UT App 42, ¶ 6, 248 P.3d 67 (per curiam). Here, the juvenile court did not adjudicate a basis for exercising jurisdiction over the children. As a result, it had authority only to dismiss the action and could not enter or enforce any other orders. *See Varian-Eimac, Inc. v. Lamoreaux*, 767 P.2d 569, 570 (Utah Ct. App. 1989)

¶14    "If a court acts beyond its authority those acts are null and void." *Id.* Accordingly, the district court correctly ruled that the no-contact provision was void. "It is fundamental that disobedience of an order of court which was issued without jurisdiction cannot be the basis of a finding and judgment for contempt." *Mellor v. Cook*, 597 P.2d 882, 884 (Utah 1979). Therefore, because the Second OSC Motion was predicated on the void no-contact provision, the district court properly denied that motion.

¶15    Grandparents further contend that a district court "does not have the authority to dismiss a legally an[d] lawfully obtained order from a juvenile court." However, the district court did not dismiss the order here. Instead, it ruled that the no-contact provision in the juvenile court's order was void—that is, the provision was of no legal effect and was never valid. *See Black's Law Dictionary* 1709 (9th ed. 2009) (defining "void" as "[o]f no legal effect" and noting that "*void* can be properly applied only to those provisions that are of no effect whatsoever"). As we explained above, that ruling was correct.

¶16    Grandparents also contend that the Guardian ad Litem "wants to ignore the 1200 years of common law that a signed

contract (stipulated agreement) is enforceable" and that the law "should not allow [Mother or the Guardian ad Litem] to disregard the stipulation they signed." However, these claims relate to the enforceability of the stipulation as a contract, not to the enforceability of the juvenile court's order. It is true that the order incorporated the terms of the stipulation. But the fact that the juvenile court's order is void for lack of jurisdiction has no bearing on whether the stipulation may be enforced as a matter of contract law. Insofar as Grandparents frame a breach of contract claim, that question is not before us, and we decline to express any opinion on it.

¶17   Affirmed.

_____