2018 UT App 20

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MARCUS WAYNE PARRY,
Appellant.

Opinion
No. 20160196-CA
Filed February 1, 2018

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 141402588

Margaret P. Lindsay and Matthew R. Morrise,
Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1    Marcus Wayne Parry appeals the district court's order
finding him competent to stand trial. We affirm.

BACKGROUND

¶2    The State brought criminal charges against Parry for rape,
tampering with a witness, and obstructing justice. Parry's
counsel then filed a petition for inquiry into Parry's competency
to proceed in the matter of the pending criminal charges. After
determining that the petition raised a "bona fide doubt as to
[Parry's] competency to stand trial," the district court granted

the petition and ordered that mental health experts examine Parry. One expert opined that Parry was incompetent to stand trial but had a "substantial probability" of becoming competent "in the foreseeable future." A second expert similarly opined that Parry was not competent to stand trial but disagreed about the prospect of restoring Parry's competency, concluding it was not substantially probable that his competency would be restored "in the near future."

¶3 Based on these two mental health evaluations, the State stipulated that Parry was not competent to proceed. Consistent with that stipulation, the district court found that Parry was mentally ill and ordered that he be committed to the care of the Utah Department of Human Services for no more than eighteen months or until stabilized, with treatment aimed at restoring his competency. While Parry spent time in county jail awaiting admission to the state hospital,[1] he underwent another evaluation. That evaluation, in which the examiner noted that he suspected Parry of malingering,[2] caused the State to request that the district court reopen the competency determination and hold an evidentiary hearing on the matter. The court agreed to reassess Parry's competency and ordered further evaluation. Around that time, Parry was finally admitted to the state hospital.

---

1. Parry's admission to the state hospital was delayed by several months due to a waiting list for available beds.

2. "Malingering is the willful, deliberate, and fraudulent feigning or exaggeration of the symptoms of illness or injury, done for the purpose of a consciously desired end. The desired end can be avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." *Wallace v. United States*, 936 A.2d 757, 760 n.2 (D.C. Cir. 2007) (citations and internal quotation marks omitted).

¶4      Several mental health experts ultimately examined Parry. Although they all agreed that Parry had some level of mental or intellectual impairment, they rendered diverging opinions regarding his competency. Two experts opined that Parry was incompetent to stand trial *with* a substantial probability that he may become competent in the foreseeable future. Another expert opined that Parry was incompetent but *without* a substantial probability of being restored to competency in the near future. Finally, the last expert, Dr. Baldwin, opined that Parry was competent to proceed.

¶5      Dr. Baldwin supported her opinion with her observations that, while Parry presented with borderline intellectual functioning and characteristics consistent with a personality disorder, Parry demonstrated strengths in all competence-related areas. Dr. Baldwin further observed that Parry's formal testing and "behavioral/clinical observations are all highly consistent with a malingering presentation." After concluding that Parry was competent to proceed, Dr. Baldwin made recommendations to "maximize [Parry's] functioning in court," given his intellectual impairment.

¶6      Following a two-day competency hearing, the district court found that Dr. Baldwin's report was "complete and well reasoned," and adopted it "in its entirety, by reference within [the court's] findings." The court further found that Parry "suffers from borderline or low average intellectual functioning which is complicated by learning disabilities." Despite those deficiencies, however, the court found that Parry understood that he was "accused of inappropriate conduct with the alleged victim and that the conduct, if proven, is wrong and could subject him to significant punishment including long term incarceration." The court also found that Parry preferred to be held at the Utah State Hospital rather than at the jail and that, in connection with his "definite view of where he want[ed] to be," Parry had "manifested a desire to manipulate the outcome of the court proceedings to obtain that desired result." The court

further found that Parry had engaged in behaviors to that end, including behaving aggressively and intentionally modifying answers to psychological testing. In addition, the court found that, when at the forensic unit at the hospital, Parry "appeared to exaggerate his lack of knowledge about his legal case and the criminal justice system." The court characterized Parry's behavior as "attempted manipulation."

¶7 The district court then turned to the statutory definition of "incompetent to proceed": a defendant is incompetent if he has either (1) the "inability to have a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged," or (2) the "inability to consult with his counsel and to participate in the proceedings against him with a reasonable degree of rational understanding." Utah Code Ann. § 77-15-2 (LexisNexis 2012).

¶8 As to the first consideration, the district court stated at the hearing that Parry had the "capacity to understand the nature of the proceedings," knew he was "in a lot of trouble," and recognized that "the punishment [could] be quite severe." The judge concluded, "I am not able to find that he has a mental condition that prevents him from having a rational and factual understanding of the proceedings or the punishment." The district court's written findings similarly indicate that Parry understood that if convicted, he faced "significant punishment including long term incarceration." The court also found that Parry's "attempted manipulation" demonstrated that he understood "the adversarial nature of criminal court proceedings."

¶9 As to the second consideration, which the court viewed as "a tougher question," the district court explained at the hearing that Parry "de-compensates when he is confronted by stress" and that that decompensation "makes it harder for him to

participate."[3] But because "harder does not mean impossible," the judge concluded, "I don't find to a preponderance that he's incapable of consulting with Counsel or participating . . . in the case." The judge continued: "We will have to make some accommodations to allow that to happen. We will have to go at a different pace. We may have to take . . . extra time, allow for extra procedures. We'll figure it out as we go . . . ." The court's written decision explained that Parry's attempted manipulation of his competency evaluation demonstrated that he "is able to engage in reasoned choices of legal strategy." The court also found that Parry "suffers from some degree of impairment and will be more difficult when confronted with unusual or stressful circumstances" but stated that it was nevertheless satisfied that "if appropriate accommodations are made that [Parry] is capable of communicating with his counsel, engaging in reasoned decisions, maintaining proper affect during court proceedings and giving relevant testimony, if necessary."

¶10    The district court ultimately determined that Parry was competent and ordered that the criminal case would proceed. The judge explained at the hearing, "[M]y conclusion is that based upon the evidence that's been presented and the testimony, I find to a preponderance that he is competent to proceed." Similarly, the court's written decision stated, "To a preponderance of the evidence the Court concludes that Mr. Parry is presently competent to proceed." Parry now appeals in accordance with Utah Code section 77-18a-1(1)(c).[4]

---

3. "Decompensation" is defined as "loss of physiological compensation or psychological balance." *Decompensation*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/decompensation [https://perma.cc/C3ZQ-3593].

4. "A defendant may, as a matter of right, appeal from: . . . an order adjudicating the defendant's competency to proceed

(continued…)

## ISSUES AND STANDARDS OF REVIEW

¶11    While not challenging the district court's factual findings on appeal, Parry raises three claims of error in its determination that, at the time of its ruling, Parry was competent to proceed. First, Parry contends that the district court "applied the opposite and incorrect standard" regarding the burden of proof. Second, Parry contends that the district court failed to find that he had a rational understanding of the full extent of the possible punishments related to his specific charges and that the court therefore improperly concluded that Parry had "a rational and factual understanding of the punishment he faces." Third, he contends that the court "did not properly conclude that [he could] consult with counsel and participate in the proceedings," citing the court's determination that Parry could do so "if appropriate accommodations are made."

¶12    "A competency determination presents a mixed question of fact and law." *State v. Wolf*, 2014 UT App 18, ¶ 13, 319 P.3d 757 (citation and internal quotation marks omitted). "The proper interpretation of the statutory standard for competency is a question of law," and we therefore review the district court's interpretation for correctness. *Id.* (citation and internal quotation marks omitted). But "whether a particular defendant is competent as so defined is a factual determination that we review for clear error." *State v. Barzee*, 2007 UT 95, ¶ 82, 177 P.3d 48. Likewise, "[c]hallenges centered on factual findings regarding competency . . . are subject to a clearly erroneous standard of review." *Wolf*, 2014 UT App 18, ¶ 13 (citation and internal quotation marks omitted).

---

(…continued)
further in a pending prosecution . . . ." Utah Code Ann. § 77-18a-1(1)(c) (LexisNexis Supp. 2017).

ANALYSIS

¶13 We begin with a brief overview of Utah's statutory scheme governing inquiries into the competency of criminal defendants. "It is well established that due process requires that a defendant be mentally competent to . . . stand trial." *State v. Arguelles*, 2003 UT 1, ¶ 47, 63 P.3d 731. Utah has codified this right by providing that "[n]o person who is incompetent to proceed shall be tried for a public offense." Utah Code Ann. § 77-15-1 (LexisNexis 2012).

¶14 Utah law presumes that a person is competent to stand trial "unless the court, by a preponderance of the evidence, finds the person incompetent to proceed." *Id.* § 77-15-5(10)(a) (Supp. 2017). The burden of proof initially rests upon the proponent of incompetency. *See id.* But if a court has previously found a defendant incompetent to proceed, the burden of proof shifts. Under those circumstances, "the burden of proving that the defendant is competent is on the proponent of competency." *Id.* § 77-15-6(4) (2012) (requiring the court to hold a hearing to determine the defendant's status after a defendant has previously been found incompetent).

¶15 Under Utah Code section 77-15-2, a person is "incompetent to proceed" if he has a mental disorder that results in either:

> (1) his inability to have a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged; or

> (2) his inability to consult with his counsel and to participate in the proceedings against him with a reasonable degree of rational understanding.

*Id.* § 77-15-2. To determine a defendant's capacity to stand trial, "the court shall consider the totality of the circumstances, which

may include the testimony of lay witnesses, in addition to the expert testimony, studies, and reports." *Id.* § 77-15-5(11) (Supp. 2017). If, after a hearing, the court determines that a defendant is competent to proceed, "the court shall proceed with the trial or other procedures as may be necessary to adjudicate the charges." *Id.* § 77-15-6(5)(a) (2012).

## I. Burden of Proof

¶16    First, Parry contends that the district court improperly shifted the burden of proof and required him to demonstrate that he is incompetent, rather than requiring the State to prove his competency. He asserts that "[a]fter a finding of incompetency, the burden of establishing competency is on the proponent of competency, which in this case was the State." The State agrees with this statement of the law, but it maintains that the district court applied the correct burden of proof.

¶17    The parties are correct that, if a defendant has been found incompetent to proceed, at a subsequent hearing the proponent of competency has the burden of proving the defendant's competency. *See id.* § 77-15-6(4). Given that the district court had previously found Parry to be incompetent, the State bore the burden of establishing Parry's competency in the later proceedings.

¶18    In arguing that the district court "applied the opposite and incorrect standard" regarding the burden of proof, Parry centers his argument on the court's oral ruling when the judge stated, "I don't find to a preponderance that he's incapable of consulting with [his counsel] or participating . . . in the case." According to Parry, the court's oral statement evidences the erroneous presumption "that Parry was competent, and put the burden on Parry to demonstrate that he was incapable of consulting with his counsel or participating in the proceedings."

¶19    While we agree with Parry that the district court's oral statement appears to misallocate the burden of proof, we

conclude that the record in its totality otherwise demonstrates that the district court understood and applied the correct burden of proof in this case. For example, at the hearing, both sides agreed that the State bore the burden of proof, and the court reiterated that the burden was on the State as the proponent of competency. Despite the district court's oral statement with respect to Parry's incapability to consult with counsel and participate, the remainder of the court's ruling, expressed orally and in writing, stated that the court found to a preponderance of the evidence Parry competent to proceed and thereby correctly placed the burden of proof on the State. *See M.F. v. J.F.*, 2013 UT App 247, ¶ 6, 312 P.3d 946 ("Our case law is clear that where a court's oral ruling differs from a final written order, the latter controls."). Accordingly, based on the totality of the proceedings, we reject Parry's argument regarding the burden of proof.

## II. Ability to Understand Potential Punishment

¶20    Second, Parry focuses on Utah Code subsection 77-15-2(1), contending that the district court "did not properly conclude that Parry [had] a rational and factual understanding of the punishment he faces." In particular, he emphasizes that the rape charge carries a potential penalty of five years to life imprisonment,[5] and he asserts that the district court found only that he knew he was "'in a lot of trouble'" and "'the punishment can be quite severe,'" not that he had "a rational and factual understanding that he could serve life in prison." He further asserts that "[n]one of the evaluators reported reviewing [with him] the maximum possible sentence for each charged crime" and that the record does not demonstrate that he "rationally and

---

5. *See id.* § 76-5-402(3)(a) (providing that except for certain circumstances, rape is a first degree felony, punishable by a term of imprisonment "not less than five years and which may be for life").

factually [understood] that he faces a potential life sentence if convicted."

¶21 The State responds that the competency evaluators were required to review the possible penalties with Parry and that "the reasonable inference" from the evaluations in this case is that "the experts' review of possible penalties included the maximum sentence possible for each charged crime." The State asserts that the "court's general finding that Parry understood the punishment necessarily included the evaluators' findings that he understood *each* punishment." Because the district court "went on to decide that Parry's mental condition did not prevent such an understanding," the State asserts that the court "made the necessary assessment of Parry's understanding of the potential punishments." We agree with the State.

¶22 To determine that a defendant is competent to proceed, the court must evaluate whether the defendant has the ability "to have a rational and factual understanding of the proceedings against him or of the punishment specified for the offense charged." Utah Code Ann. § 77-15-2(1) (LexisNexis 2012). Parry does not dispute that he was capable of having a "rational and factual understanding of the proceedings," but instead he concentrates his argument on his ability to have a rational and factual understanding of "the punishment specified for the offense charged."

¶23 A court's assessment of a defendant's ability to understand potential punishments is aided by mental health experts' evaluations. Utah Code section 77-15-5 requires experts who evaluate a defendant's competency to "consider and address," among other things, the defendant's present capacity to "comprehend and appreciate the charges or allegations"; "comprehend and appreciate the range and nature of possible penalties, if applicable, that may be imposed"; "engage in reasoned choice of legal strategies and options"; and "understand the adversary nature of the proceedings." *Id.*

§ 77-15-5(4)(a)(i), (iii), (iv), (v) (Supp. 2017); *see also State v. Lafferty*, 2001 UT 19, ¶ 38, 20 P.3d 342 (describing section 77-15-5(4) as "govern[ing] the scope of an expert's examination and report to the court in a competency hearing").

¶24 Dr. Baldwin, whose report the district court adopted in full, considered and addressed these factors. According to Dr. Baldwin, Parry correctly identified the respective severity of the charges against him, and he understood that the first degree felony rape charge was the most serious charge and that he was charged with two other felonies. Dr. Baldwin also reported that Parry was provided information about the range and nature of possible penalties for the charges he faced, and that he understood that "he could go to prison for a lengthy period of time." Based on these facts, Dr. Baldwin opined that Parry had "an accurate assessment of potential penalties he faces if found guilty." Dr. Baldwin further concluded that Parry had "minimal" incapacity in connection with his ability to comprehend and appreciate the range and nature of potential penalties, and had "good factual and rational knowledge in this area."

¶25 The district court concluded that, in light of this evidence and adopted findings, Parry did not have "a mental condition that prevent[ed] him from having a rational and factual understanding of . . . the punishment." The court determined that Parry knew he was "in a lot of trouble" and that he recognized "the punishment can be quite severe if he's convicted." The court also determined that Parry understood that he could be subject to "significant punishment including long term incarceration."

¶26 Although Parry maintains that the district court's analysis fell short because it did not specify that Parry was either rationally or factually aware that he potentially could serve life in prison, the district court was not required to make that specific determination. Instead, the court was required to assess

Parry's ability "to have a rational and factual understanding of . . . the punishment specified for the offense charged." Utah Code Ann. § 77-15-2(1). As indicated in the Baldwin report, Parry was given information regarding the range and nature of possible penalties. From this evidence, the court could reasonably conclude that Parry was informed about the types of possible punishments and the time frames at stake, including the possibility of life in prison.[6] And because the district court adopted the Baldwin report, the court's analysis incorporated Dr. Baldwin's conclusions that, after being given such information, Parry had "an accurate assessment of potential penalties he faces" and had "good factual and rational knowledge" regarding possible punishments associated with his charges. The district court also expressly determined that Parry had the ability to rationally and factually understand the possible "long term incarceration" and the potentially severe punishment. Therefore, Parry has not shown that the district court improperly concluded that he was capable of having a rational and factual understanding of the possible punishment he faces.

### III. Ability to Consult and Participate

¶27    Third, focusing on Utah Code subsection 77-15-2(2), Parry contends that the district court did not properly conclude that he

---

6. Even though we conclude that Dr. Baldwin's reference to "potential penalties" necessarily includes the possibility that Parry would spend his life in prison, we observe that the best practice is for mental health experts to identify with specificity the penalties discussed with a defendant. The more explicit experts are about what they told a defendant and what the defendant understood, the more helpful their evaluations will be to a court making assessments regarding a defendant's ability to have a rational and factual understanding of the punishment specified for the offense charged.

had the capacity to consult with counsel and participate in the proceedings with a reasonable degree of rational understanding. In particular, he cites the district court's conclusion that "Parry is competent to proceed, *but only if* accommodations are made to allow Parry to meaningfully consult with his counsel and participate in the proceedings." (Emphasis added.) Parry then contends that it was unreasonable for the court to condition its finding of Parry's competency on unspecified accommodations, asserting that the court "had no idea what reasonable accommodations could be made that would render Parry competent," choosing instead to "'figure that out as we go.'" Parry further argues that even presuming the accommodations intended by the court were those suggested by Dr. Baldwin, those accommodations "are not reasonable" and that "[i]f such measures are necessary in order for Parry to be able to comprehend and participate in the proceedings, the better conclusion is that Parry is not competent to proceed."[7]

¶28 The State counters that the district court's determination that Parry was competent to stand trial is not a conditional determination dependent on Parry receiving certain

---

7. Parry also asserts that the district court concluded he "had the ability to consult with his counsel and participate in the proceedings against him on the ground that it would not be impossible for him to do so," and that the court thereby "stretch[ed] the statutory definition of competency well beyond its limits." The State, in contrast, contends that the court did not use "'impossibility' as the yardstick for assessing competency." Based on our reading of the transcript where the court indicated that Parry's conditions would "make[] it harder for him to participate" but not "impossible," along with the statements otherwise made by the court during the hearing and in its written ruling, we conclude that the court's reference to impossibility does not establish that it disregarded the statutory standard in the way that Parry alleges.

accommodations at trial. The State argues that when the court's rulings and the evidence are considered in their totality, it is evident that the court found Parry competent to meaningfully consult with counsel and participate in the proceedings, and that the court did not anticipate Parry becoming incompetent when confronted with stresses associated with trial. The State further asserts that the accommodations referred to by the court were recommendations for minimizing the effects of Parry's intellectual impairment and maximizing his functioning in court; they were not conditions on which Parry's competency depended.

¶29　The resolution of Parry's challenge to the district court's determination of competency depends on how we construe the court's ruling. Both Parry and the State agree that the court determined that Parry was competent to proceed at the time of the ruling. In other words, they agree that the court determined that Parry had the ability "to consult with his counsel and to participate in the proceedings against him with a reasonable degree of rational understanding." Utah Code Ann. § 77-15-2(2) (LexisNexis 2012). But Parry and the State do not agree on the significance of the court's reference to accommodations. Parry views the court's determination of competency at trial as tied to and conditional on accommodations being afforded to him at trial; the State views the court's competency determination as unconditional and the accommodations as mere suggestions that would maximize Parry's functioning at trial.

¶30　We conclude that the district court's ruling is ambiguous in that it could be read either way. For example, the court declared Parry "presently competent to proceed" and "able to engage in reasoned choices of legal strategy," while simultaneously expressing the view that Parry was "capable of communicating with his counsel" and "engaging in reasoned decisions" "*if* appropriate accommodations are made." (Emphasis added.)

¶31 When faced with an ambiguous order, we construe it "under the rules that apply to other legal documents." *Culbertson v. Board of County Comm'rs of Salt Lake County*, 2001 UT 108, ¶ 15, 44 P.3d 642, *overruled on other grounds by Madsen v. JPMorgan Chase Bank, NA*, 2012 UT 51, 296 P.3d 671. In addition to looking at the language of the order, "we [may] resort . . . to the pleadings and findings." *See id.* (alteration and omission in original) (citation and internal quotation marks omitted). "Where construction is called for, it is the duty of the court to interpret an ambiguity [in a manner that makes] the judgment more reasonable, effective, conclusive, and [that] brings the judgment into harmony with the facts and the law." *Id.* (alterations in original) (citation and internal quotation marks omitted). Mindful of this duty, we resolve the ambiguity in the district court's order by construing the accommodations as recommendations for maximizing Parry's capabilities, not as conditions necessary to establish his competency. We reach this conclusion for three reasons.

¶32 First, the court expressly adopted the Baldwin report as part of its order. The Baldwin report is unequivocal in its determination that Parry was competent to stand trial, and Dr. Baldwin in no way suggested that Parry's continued competency was dependent upon receiving accommodations at trial. While it is true that Dr. Baldwin made recommendations to "maximize [Parry's] functioning in court,"[8] she did not condition her

---

8. Dr. Baldwin's recommendations included, among other things, "provid[ing] clear, concrete, simple directions broken down into multiple components"; rehearsal and repetition; presenting instructions with "semantic prompting or contextual cues"; assessing for comprehension; organizing materials ahead of time; "utiliz[ing] pictures and non-verbally based information"; reducing distractions; allowing the opportunity to finish one task before starting a new one; being flexible; and providing opportunities to ask questions.

opinion of Parry's competency at trial on their implementation. Thus, because the court expressly adopted the Baldwin report in its entirety, it is reasonable to construe the district court's reference to accommodations not as mandatory conditions to the court's competency determination, but as suggestions for minimizing the stress Parry may experience at trial and for maximizing his functioning in court.

¶33 Second, we agree with the State that no record evidence supports a finding of conditional competence. The district court heard the opinions of multiple experts—those who opined that Parry was incompetent and Dr. Baldwin, who found Parry was competent. There was no expert opinion or other evidence upon which the court could have relied to conclude that Parry was competent but that once trial began he would necessarily lose his capacity to consult with counsel and participate in the proceedings with a reasonable degree of rational understanding if particular accommodations were not made. Thus, rather than determining that the district court reached a conclusion unsupported by the evidence presented, we construe the court's order as consistent with the evidence.

¶34 Third, in both its oral and written rulings, the court acknowledged that Parry "de-compensates when he is confronted by stress," but the court did not equate decompensation with legal incompetency. While the court found that decompensation "makes it *harder* for [Parry] to participate," the court does not appear to have predetermined that Parry would inevitably lose the capacity to consult with counsel or participate in the trial proceedings if accommodations were not made. (Emphasis added.) The court clearly intended to make accommodations at trial to minimize the anticipated effects of stress on Parry, but we are not persuaded that the court predetermined that without the accommodations Parry could not reasonably participate, as required. *See* Utah Code Ann. § 77-15-2(2).

CONCLUSION

¶35 We conclude that Parry has not demonstrated that the district court misallocated the burden of proof. We also conclude that Parry has not shown impropriety in the district court's conclusions that (1) Parry had the ability to have a rational and factual understanding of the punishment specified for the charged offenses, and (2) Parry had the ability to consult with counsel and participate in the proceedings with a reasonable degree of rational understanding. Accordingly, we affirm the district court's competency order.